ANSCHUTZ *v.* MILLER and another.[1]

*(Circuit Court, E. D. Missouri. April 9, 1884.)*

SALES—MISREPRESENTATIONS AS TO QUALITY—COUNTER-CLAIM.

Where A. sold B. a lot of ice at an agreed price, to be delivered when called for, and went to expense, at B.'s request, in getting the ice out of the house in which it was stored, and B. paid part of the agreed price and part of the sum expended by B. at his request, and went to expense in sending for the ice, but only received about half of it, and refused to receive the balance, on the ground that he had been deceived into purchasing it by B's misrepresentations as to its quality, *held,* in a suit by A. for the balance of the contract price and the balance of money expended as aforesaid, that A. was entitled to recover, notwithstanding any misrepresentations he might have made, if B. had been given a fair opportunity to inspect the ice before he closed the bargain; but that if B. had not been given an opportunity to inspect it, and had relied entirely upon A.'s representations as to its quality, and it was in fact of a poorer quality than represented, then A. was only entitled to recover the value of the ice received by B., and that B. was entitled to be allowed as a counter-claim and to recover back from A. all the money he had paid A. in excess of the value of the ice received.

At Law.

*Hagerman, McCrary & Hagerman,* for plaintiff.

*Johnson, Lodge & Johnson,* for defendant.

TREAT, J., *(charging jury.)* Though the pleadings are not quite so distinct as they might be, yet they sufficiently show what the controversy between the parties is. It is alleged that 843½ tons of ice were contracted for between the parties, plaintiff and defendant, at the price of three dollars per ton. On that there had been paid all that, at the contract price, would be required, except the sum of $1,030.50. That appears in the pleadings, and is embraced in the first count. It also appears, and is admitted by defendant's counsel, with respect to the second count, that the defendant did make the expenditures and perform the labor set out in that count, on which he has been paid the sum of $240, leaving $237.15 still due with respect to those charges.

It is contended on the part of the defendant that there should be no recovery against him in this case, because he bought this ice on the representations made by the plaintiff, relying thereon, and that the ice was not what he bargained for. The rule of law with regard to these matters, in the light of which you must examine this testimony, is this: A party having an article to sell represents what he thinks the article to be. If he submits it to the inspection of the other party, and the other party has ample opportunity to examine it, and, having done so, or refused so to do, when opportunity is given him, accepts it, he is bound by the bargain he thus makes, so that there are no after inquiries in respect to it. Hence the primary question, and the strain of this controversy, is, did the defendant ac-

---

[1] Reported by Benj. F. Rex, Esq., of the St. Louis bar.

cept th s ice on the representations of the plaintiff, not having an opportuni y to examine it himself, and thereby necessarily relying upon what tl e plaintiff said? If that be the case, then whatever reclamation he may have, should be allowed him. If it be not the case, then there should be no allowance, and the only thing is to give to the plainti f his demand of what is due on the ice, $1,030.50, and his $237.1 ) on the second count. On the other hand, if he did rely upon these r )presentations, having no opportunity to examine for himself, and th ) ice was not what was represented, the inquiry will be what you wi l allow him on what is here termed the "counter-claim." He says tl at he paid the cost of sending the steamer Dolphin and barges up to Keokuk to receive this ice, and he wishes the jury to allow him for the whole of that cost, giving no credit whatsoever for the amount of ice that he received, and which was caused to be transmitted by that st eamer and its barges; and he also wishes you to allow him, by way of counter-claim,—he having been deceived, as he says, within the ru e laid down,—the amount of $240 for these ordinary charges, which the plaintiff incurred at his request; and also to pay him back (for I have been making some arithmetical calculations here) his $1,50( , which he did pay on this ice, and not charge him with anything for the ice which he actually received; for nothing has been said d iring the whole of this trial in regard to the price of the ice received which produces some confusion. If you reach the conclusion that t iis counter-claim has been established, you will be left in the condit on indicated, namely, of determining what is the value of the ice wl ich he did get,—400 and some tons, as indicated here. He gives to credit for that at all. It stands in this condition, and hence the co ifusion, that he wishes you to allow him the $1,500 which he paid towards this ice, and all the costs and expenses to which he was pi t for sending up the steamer and barges to Keokuk, and to allow nothii g for the ice that he actually received. As I say, we are left in this c nfusion in regard to the matter; for so far as my memory serves me there has been no testimony introduced on that subject at all; l ence you will have to get at it the best way you can if you reach that point.

The transaction here is one familiar to the law and to business men. This plaintiff proposed to sell a certain quantity of ice, and he represented it to be of a certain description. The party was to come )r send and have it measured, and examine and accept it. That accep ance implies that if full opportunity was given him to examine it, he would do so. He did it. Now, unless there was some fraud or conni ance whereby he could not examine it, and full opportunity was given aim to do so, he can have no counter-claim in this case. He must stand to the bargain, as he made it with his eyes wide open, with full oppoi iunity to determine for himself in regard to it. If, on the other hand, there was concealment or fraud practiced on him whereby he could not ascertain fully about it, and the ice was other than repre-

sented, he being cheated into the supposition that it was what was represented, then he should receive allowances accordingly; in other words, his counter-claim. If you reach that point with regard to the counter-claim, the difficulties that I have stated may occur to you, and if the parties have not presented them in a way that you can understand them, you will have to do the best you can with regard to the amount thereof.